**STATE OF WEST VIRGINIA**

*In re*: **J.W. and A.W.**

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 17-0575** (Pocahontas County 16-JA-09(D) & 16-JA-11(D))

## MEMORANDUM DECISION

Petitioner Father E.N., by counsel Kristopher Faerber, appeals the Circuit Court of Pocahontas County's May 24, 2017, order terminating his parental and custodial rights to J.W. and A.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Eric M. Francis, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental and custodial rights without imposing a less-restrictive dispositional alternative and by relying only on his incarceration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2016, the DHHR filed an abuse and neglect petition against the parents that alleged child X.W. suffered a tooth broken "down to the root" and did not receive proper dental care.[2] According to the petition, the mother left the child with a maternal aunt approximately one year earlier. The DHHR arranged immediate dental care for the child, but the aunt failed to bring the child to the appointment. As such, Child Protective Services ("CPS") opened a case because of the lack of dental care and conditions in the home, including dog feces and urine on the floor, among other issues.

In the course of its ongoing case, CPS later discovered that the mother also left A.W. and J.W. with the aunt. At one point, a CPS worker discovered A.W. to be in a filthy condition with scratches, circular marks, and a rash on his body. However, a short time later CPS observed the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]X.W. is not petitioner's biological child and, thus, is not at issue on appeal.

1

home and children to be in an improved condition. The mother additionally indicated that she would be residing in the home. CPS instructed her that if the environment did not improve and remain improved that the children would be removed.

Shortly thereafter, law enforcement conducted a welfare check on animals at the residence and found it to be in a deteriorated condition due to the presence of animal feces and urine throughout, among other conditions. The children were also found to be filthy and covered in scratches, bites, bruises, and circular marks. According to the petition, there was little to no food in the home and several hazardous conditions in the yard. The children underwent medical examinations, and A.W. was diagnosed with an upper respiratory infection. As such, the DHHR alleged that the parents failed to provide the children with proper nourishment, medical attention, and care, among other allegations. The DHHR further indicated that petitioner was serving a sentence of three to fifteen years for his criminal conviction of attempted first-degree murder. According to the DHHR, petitioner's minimum possible release date was August of 2022. Thereafter, petitioner waived his preliminary hearing and stipulated to his adjudication.

After multiple continuances of the dispositional hearing at petitioner's request, the circuit court held the dispositional hearing in April of 2017. The children's foster mother testified that her family would prefer to adopt the children, as opposed to being granted legal guardianship. The DHHR then recommended termination of petitioner's parental rights. Upon findings that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and that it was necessary for the children's welfare, the circuit court terminated petitioner's parental and custodial rights.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[3]The parents' parental rights to the children were terminated below. According to the DHHR, J.W. and A.W. have been placed in the same foster home as their half-sibling, X.W. The permanency plan is for all three children to be adopted into that home.

2

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating his parental and custodial rights solely upon his incarceration and without imposing a less-restrictive dispositional alternative. We do not agree. In discussing the termination of an incarcerated parent's rights, we have held as follows:

> When no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

*Id.* at 91, 717 S.E.2d at 875, Syl. Pt. 3. On appeal, petitioner admits that the circuit court considered the requisite factors in terminating his parental and custodial rights, although he argues that the circuit court's conclusions regarding this analysis are erroneous. According to petitioner, these factors mitigate against terminating his parental and custodial rights. The Court, however, finds no error in the circuit court's findings below.

In analyzing these factors, the circuit court found that petitioner was incarcerated for attempted murder, which "shows a propensity for violence." Additionally, it was established that petitioner's sentence was three to fifteen years of incarceration and "it is unclear when a parole hearing has been scheduled[.]" The circuit court further found that petitioner not only spent little time caring for the young children before his incarceration, but that he was aware of the mother's substance abuse issues yet left the children in her care regardless. Further, the circuit court found that the children's foster parents wished to adopt the children in order to be a permanent placement for them and to prevent separation from their half-sibling, X.W., whom the foster parents also sought to adopt. Accordingly, the circuit court ultimately found that the *Cecil T.* factors supported termination of petitioner's parental and custodial rights. We agree, as it is clear that the nature of the offense for which petitioner was incarcerated, in addition to the terms and length of the incarceration, all support termination of petitioner's parental and custodial rights. This is especially true in light of the circuit court's findings regarding the children's best interests being served by adoption, as opposed to legal guardianship.

Further, this same evidence supports the circuit court's termination of petitioner's parental and custodial rights instead of a less-restrictive dispositional alternative. According to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental and custodial rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected and that termination is necessary for the children's welfare. Here, the circuit court made the necessary findings, based upon substantial evidence, to support termination of petitioner's parental rights.

According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

Here, the circuit court specifically found that petitioner was unable to follow through with the DHHR's reasonable family case plan due to his incarceration. Moreover, as addressed above, the circuit court made multiple findings addressing how termination of petitioner's parental and custodial rights served the children's best interests, as opposed to a legal guardianship that could later lead to separation from their half-sibling. As such, it is clear that the circuit court had sufficient evidence upon which to find that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental and custodial rights was necessary for the children's welfare.

> We have also held that
>
> > "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604]. . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Because the record is clear that the circuit court had ample evidence upon which to base its findings, we find no error in the termination of petitioners' parental and custodial rights to the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 24, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: November 22, 2017

4

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker